**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:26-cv-21709-KMM

JULIO BRISENO LUNA,

      Petitioner,

v.

WARDEN, Krome Service Processing Center,
*et al.*,

      Respondents.

                                  /

## <u>ORDER</u>

THIS CAUSE came before the Court upon Petitioner Julio Briseno Luna's ("Petitioner")

Petition for Writ of Habeas Corpus. (ECF No. 1) (the "Petitioner" or "Pet."). The Court issued

an Order to Show Cause (the "OTSC") requiring Respondents to file one consolidated

memorandum of fact and law to show cause why the Petition should not be granted. *See generally*

(ECF No. 4). Respondents thereafter filed a Response to the Order to Show Cause (the

"Response" or "Resp.") (ECF No. 5). Petitioner did not file a Reply. The Petition is now ripe for

review. As set forth below, the Petition is GRANTED IN PART as to Petitioner's entitlement to

a bond hearing. The Court makes no determination as to whether Petitioner is in fact entitled to

be released following such a hearing.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Briseno Luna is a native and citizen of Mexico who first entered the United States on or

about March 15, 2001, near Douglas, Arizona. Pet. ¶ 1; Resp. at 1; (ECF No. 5-2) at 1. He was

eventually issued a Notice to Appear ("NTA") on July 29, 2001, charging him with inadmissibility

because he was present in the United States without being admitted or paroled and because he was not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act (INA).  (ECF No. 5-2) at 1–2; Resp. at 1–2 (citations omitted).  This NTA placed Petitioner into removal proceedings pursuant to 8 U.S.C. § 1229a.  Resp. at 2.  Petitioner was eventually ordered removed in absentia on September 8, 2001.  *Id.*

Although he was ordered removed, on January 6, 2014, he was granted an Order of Supervision ("OSUP") when Immigration and Customs Enforcement ("ICE") "determined that [Petitioner] was neither a flight risk nor a danger to the community."  Pet. ¶ 1; (ECF No. 1-2).  Petitioner has no criminal history and has abided by the OSUP's terms, including attending regularly-scheduled check-ins with ICE.  Pet. ¶ 1.  However, on September 2, 2025, ICE revoked Petitioner's OSUP at one of these regular check-ins.  *Id.* ¶ 3.  Petitioner alleges he was re-detained at that point despite receiving no prior notice and no indication for the reasons that his OSUP had been revoked, as ICE "did not identify any violation of the conditions of supervision, any changed circumstances, or any basis to conclude that removal had become reasonably foreseeable."  *Id.* ¶¶ 3, 6.

Since this time, Petitioner has been detained at Respondent Krome North Service Processing Center ("Krome"), located at 18201 SW 12th Street, Miami, Florida 33194 and named through its Warden who is being sued in his official capacity.  *Id.* ¶ 4.  In separate proceedings, the United States Court of Appeals for the First Circuit has granted a stay of Petitioner's removal, pending resolution of his petition for review of his initial order of removal.  (ECF No. 1-1);

*Briseno-Luna v. Bondi*, No. 20-1723 (1st Cir. Sep. 23, 2025)[1]. According to the stay order, the stay is only lifted if Petitioner's review is denied and a mandate issues to that effect. (ECF No. 1-1). Therefore, although the First Circuit has ordered Petitioner's case be remanded to the Board of Immigration Appeals, that stay remains in effect as his petition for review before the First Circuit was not denied. *See generally Briseno-Luna v. Blanche*, No. 20-1723 (1st Cir. Apr. 29, 2026).

Petitioner challenges his detainment, and brings the following counts: (1) violation of his Fifth Amendment right to substantive due process; (2) violation of his Fifth Amendment right to procedural due process; (3) violation of the INA; (4) violation of the *Accardi* doctrine; and (5) violation of the APA. Pet. ¶¶ 22–61. Petitioner requests the Court grant the following relief: (1) assume jurisdiction over this matter; (2) issue a writ of habeas corpus ordering that Respondents release Petitioner; (3) order that Respondents show cause why this Petition should not be granted; (4) award Petitioner attorney's fees and costs under the Equal Access to Justice Act; and (5) grant any other relief that this Court deems just and proper. *Id.* at 16.

In the OTSC, the Court assumed jurisdiction over the Petition, ordered that Petitioner was not to be transferred out of this District until the instant proceedings are terminated, ordered Respondents to file one consolidated memorandum of law and fact to show cause why the Petition should not be granted, and deferred consideration of the other relief requested in the Petition until after any Response and Reply had been reviewed. *See* (ECF No. 4) at 2–3. The Response has since been filed. *See* Resp. Respondents argue that 8 U.S.C. § 1231(a) does not govern Petitioner's detention because his removal has been stayed by the First Circuit. *Id.* at 2 (citing *Farah v. U.S.*

---

[1] The Court takes judicial notice of the record from the First Circuit's case pursuant to Federal Rule of Evidence 201 and *Nguyen v. United States,* 556 F.3d 1244, 1259 n.7 (11th Cir. 2009) (citation omitted)

*Att'y Gen.*, 12 F.4th 1312 (11th Cir. 2021)).  Instead, Respondents argue Petitioner's detention is governed by the statute under which he was previously removable, meaning he is properly detained pursuant to 8 U.S.C. § 1225(b)(2) as an applicant for admission.  Resp. at 3; 5–9.  Respondents further argue that § 1226(a) is inapplicable and that the Court is without jurisdiction to review Petitioners' claims under 8 U.S.C. § 1252(g) and 8 U.S.C. § 1252(b)(9).  *See generally* Resp.

## II.   LEGAL STANDARD

Section 2241 authorizes a district court to grant a writ of habeas corpus whenever a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 533 U.S. 674, 693 (2008) (citation omitted).  The "essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to be within the "core of habeas corpus," a petitioner must seek "either immediate release from that confinement or the shortening of its duration." *Preiser v. Rodriguez*, 411 U.S. 475, 484, 489 (1973).  Further, for "'core habeas petitions,' 'jurisdiction lies in only one district:  the district of confinement.'" *See Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)).  The Court's habeas jurisdiction extends to challenges to immigration-related detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.   DISCUSSION

As a preliminary matter, the Court notes that Petitioner requests the Court issue a writ of habeas corpus requiring Respondents release him from detainment altogether because his continued detention goes beyond what is allowable under 8 U.S.C. § 1231(a). Pet. at 16.  However, the Court agrees with Respondents that, because Petitioner's removal has been stayed by the First Circuit, the applicable inquiry in this matter is not whether Petitioner's continued detention

violates section 1231, but rather whether Petitioner may continue to be detained without an individualized determination as to whether he is entitled to bond.  Resp. at 2–3; (ECF No. 1-1); *see also Farah*, 12 F.4th at 1332 ("[S]ection 1231(a) does not govern the detention of an alien whose removal has been stayed pending a final order[.]").  The Court therefore evaluates Respondents' arguments as to whether Petitioner's continued detention remains lawful.

### a.  The Policy

A new policy, "Interim Guidance Regarding Detention Authority for Applicants for Admission" (the "Policy"), was announced by ICE and promulgated by DHS in coordination with the DOJ and defines an "applicant for admission" as an "alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival.  INA § 235(a)(1)."  *ICE Memo:  Interim Guidance Regarding Detention Authority for Applications for Admission*, AILA (July 8, 2025), https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (the "ICE Memo").  The Policy then states that "[e]ffective immediately, it is the position of DHS that such aliens are subject to detention under INA § 235(b) and may not be released from ICE custody except by INA § 212(d)(5) parole."  *Id.*  Contrary to previous practice, the Policy imposes mandatory detention regardless of the circumstances of an alien's entry without inspection or admission.  *See generally* ICE Memo.

The BIA adopted a consistent position in *Matter of Yajure Hurtado*, which affirmed as a matter of first impression an Immigration Judge's holding that "he lacked authority to hear the respondent's request for a bond as the respondent is an applicant for admission and is subject to mandatory detention under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and the regulation at 8 C.F.R. § 235(B)(1)(ii)."  29 I. & N. Dec. 216, 229 (BIA 2025).  On February 18,

2026, the Honorable Sunshine S. Sykes of the United States District Court for the Central District of California issued an Order wherein *Matter of Yajure Hurtado* was vacated as contrary to law under the Administrative Procedure Act.  *See* Order Granting Plaintiff Petitioners' Motion to Enforce Judgment at 19, *Maldonado Bautista et al. v. Santacruz Jr. et al.*, No. 5:25-cv-01873 (C.D. Cal. Feb. 18, 2026).  However, that decision was appealed and the Ninth Circuit granted the Government's request for a stay pending appeal of certain orders issued in the Central District of California case, including the order vacating *Matter of Yajure Hurtado*.  *See* Order from Ninth Circuit Court of Appeals, *Maldonado Bautista et al. v. Santacruz Jr. et al.*, No. 5:25-cv-01873 (C.D. Cal. Mar. 31, 2026).  Thus, *Matter of Yajure Hurtado* remains in effect pending resolution of that appeal.

Immigration Court refusals to provide bond hearings had already been the subject of much dispute, and as discussed below the Policy has been heavily litigated across the country.  The overwhelming outcome of these cases—including in this District—was initially a rejection of refusals to hear bond and/or the Policy as violating the INA in applying § 1225(b), instead of § 1226(a) as required by the INA, to people who entered without admission but were apprehended some time after prior entry, in contrast to those apprehended upon entry or soon thereafter at U.S. ports of entry.  *See generally, e.g.*, *Puga v. Ass. Field Off. Dir., Krome N. Serv. Processing Ctr.*, No. 25-cv-24535, 2025 WL 2938369 (S.D. Fla. Oct. 15, 2025) (Altonaga, C.J.); *Sanchez-Moralez v. Field Off. Dir., Miami Field Off., U.S. Immigr. & Customs Enf't*, No. 26-cv-20217, 2026 WL 496726 (S.D. Fla. Feb. 23, 2026) (Becerra, J.); *Castro v. Parra*, No. 26-cv-20422, 2026 WL 788019 (S.D. Fla. Mar. 20, 2026) (Bloom, J.); Order, *Cerro Perez v. Parra et al.*, No. 25-cv-24820, at *6–11 (S.D. Fla. Oct. 27, 2025) (ECF No. 9) (collecting cases).  Nevertheless, a distinct split has emerged since.  *See generally, e.g.*, *Rocha Vargas v. Miami Fed. Det. Ctr.*, No. 25-cv-25966,

2026 WL 911291 (S.D. Fla. Apr. 2, 2026) (Ruiz, J.) (finding detention pursuant to § 1225(b) proper); *Morales v. Noem*, No. 25-cv-62598, 2026 WL 236307 (S.D. Fla. Jan. 29, 2026) (Singhal, J.) (same); *Mokanu v. Warden Miami Fed. Det. Ctr.*, No. 25-cv-24121, 2026 WL 472294 (S.D. Fla. Feb. 19, 2026) (Artau, J.) (same); *Hernandez v. Miami Field Off. Dir.*, No. 26-cv-20440, 2026 WL 554694 (S.D. Fla. Feb. 27, 2026) (Altman, J.) (same).

The Fifth and Eighth Circuits have both recently held, as the first Circuit Courts to do so, that aliens in situations such as Petitioner's are properly detained pursuant to § 1225(b)(2)(A) and are therefore not entitled to release on bond. *See generally Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). On the other hand, the Second Circuit in *Cunha v. Freden*, No. 25-3141-pr, 2026 WL 1146044 (11th Cir. Apr. 28, 2026) determined that those same aliens are properly detained pursuant to § 1226(a) and are therefore entitled to a bond determination. The Eleventh Circuit, within which this Court sits, has now similarly found that § 1226(a), and not § 1225(b)(2)(A), covers the detention of aliens found already present in the country and therefore that such detainees are eligible for bond while going through immigration proceedings. *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, Nos. 25-14065, 25-14075, 2026 WL 1243395 (11th Cir. May 6, 2026).

### b. Administrative Exhaustion

While Respondents do not raise failure to exhaust administrative remedies, the Court nevertheless addresses exhaustion to ensure it has subject matter jurisdiction over the Petition. *See Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001) ("[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously [e]nsure that jurisdiction exists over a case." (citations omitted)). Exhaustion may be excused "where no genuine opportunity for adequate relief exists . . . or an administrative appeal would be futile."

7

*Linfors v. United States*, 673 F.2d 332, 334 (11th Cir. 1982) (citations omitted). This is plainly the case here, where Immigration Judges may only properly reach one conclusion absent new precedent from the BIA. *See Puga*, 2025 WL 2938369, at *2 ("Thus, considering *Matter of Yajure Hurtado*, it appears evident that an alien like Petitioner, who has resided in the United States for years but has not been admitted or paroled, will be subject to mandatory detention without bond under section 1225(b)(2) upon review by the BIA." (citing *Matter of Yajure Hurtado*, 29 I&N Dec. at 221)); Order, *Cerro Perez*, No. 25-cv-24820, at *3 (S.D. Fla. Oct. 27, 2025) (ECF No. 9) (finding initial bond hearing request futile).

The Court fails to find any basis upon which a bond appeal to the BIA or request for reconsideration or release to an Immigration Judge could possibly result in an outcome other than sustaining Petitioner's detention pursuant to § 1225(b)(2)(A) to the extent *Matter of Yajure Hurtado* continues to be in effect while the Ninth Circuit appeal in *Maldonado Bautista* remains pending. Thus, the Court finds that any prudential exhaustion requirements that may be applicable here are excused for futility.

### c.  Statutory Framework

Respondents argue that Petitioner is an "applicant for admission" within the meaning of § 1225 and therefore may only be released on parole under 8 U.S.C. § 1182(d)(5), and that the claims are otherwise barred by 8 U.S.C. § 1252(g) and 8 U.S.C. § 1252(b)(9). *See generally* Resp. As an initial matter, "[t]he question of whether section 1225(b)(2) or section 1226(a) governs Petitioner's detention is a question of statutory interpretation squarely within the Court's jurisdiction." *Sanchez-Moralez*, 2026 WL 496726, at *3.

The Eleventh Circuit has now directly answered this question: § 1226(a) applies to "unadmitted aliens found in the interior of the United States." *Hernandez Alvarez*, 2026 WL

1243395, at *1.  In reaching this conclusion, the Eleventh Circuit considered the text, statutory structure, and history of the INA to determine that the terms "applicant for admission" and "seeking admission" may be synonymous on their plain and ordinary meaning but cannot mean the same thing here where "applicant for admission" is a defined term and "seeking admission" is not.  *See id.* at *5–20.  As set forth below, this is dispositive of which provision applies to the detention of aliens already present in the United States.

An "applicant for admission" under 8 U.S.C. § 1225 is defined as an "alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)."  *Id.* § 1225(a)(1).  Section 1225(b)(1) encompasses "all aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation," which group of people is generally subject to expedited removal unless they are referred for a credible fear interview and thereby detained pending further consideration of their asylum claim.  *Id.*

Section 1225(b)(2) is broader and "serves as a catchall provision that applies to applicants for admission not covered by § 1225(b)(1)," subject to several exceptions.  *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).  Under § 1225(b)(2), "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title," which governs removal.  8 U.S.C. § 1225(b)(2)(A); *id.* § 1229a. The term "seeking admission" is not defined.  *See id.* § 1225(b)(2)(A); *see generally id.* § 1101. Importantly, detention under § 1225(b)(2) is mandatory, subject to DHS's discretionary parole authority "on a case-by-case basis for urgent humanitarian reasons or significant public benefit."

9

*See* 8 U.S.C. § 1225(b)(2); 8 U.S.C. § 1182(d)(5)(A); *Gomes v. Hyde*, 804 F. Supp. 3d 265, 269 (D. Mass. 2025); 8 U.S.C. § 1182(d)(5)(A).  Such discretionary parole, however, "shall not be regarded as an admission of the alien" and once the purposes thereof have been satisfied, the "case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."  8 U.S.C. § 1182(d)(5)(A).

The Government is also permitted to "detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 289.  Section 1226(a) provides that upon warrant issued by the Attorney General, "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. § 1226(a).  Subject to the provisions of § 1226(c), which applies to the detention of aliens facing criminal charges, pending a decision on whether an alien is to be removed, the Attorney General:  (1) may continue detention; (2) may allow release on a bond of at least $1,500 or on conditional parole; and (3) may not provide work authorization unless the alien is a lawful permanent resident or otherwise would receive such authorization. *Id.* §§ 1226(a)(1)–(3).

Unlike § 1225(b)(2), § 1226 provides for a "discretionary detention framework." *See* 8 U.S.C. § 1226(a); *Gomes*, 804 F. Supp. 3d at 269.  The arresting immigration officer makes an initial custody determination, which aliens detained under this provision may appeal in a bond hearing before an Immigration Judge. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1).  Federal regulations require that under § 1226(a), detainees are entitled to "bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)); *see also Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) ("To be sure, a noncitizen detained under §

10

1226(a) is undoubtedly entitled to a bond hearing before an immigration judge.").[2]

The crucial determination, therefore, is whether a person found within the United States and detained in a manner unrelated to any immigration actions (e.g., after a normal traffic stop rather than upon applying for asylum) is nevertheless properly considered an "alien seeking admission" so as to be subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).  Such a finding would require a reading that all "applicants for admission," which is any alien present without admission or arriving, are also "seeking admission."  *Id.*  As discussed above, the Eleventh Circuit found that those two terms are not in fact synonymous, and that a person may fall within the definition of "applicant for admission" without also seeking admission, which in that case was detention following a traffic stop.  *Hernandez Alvarez*, 2026 WL 1243395, at *8 ("Petitioners were not applying for entry in any literal sense when they were detained following a traffic stop, nor were they taking any cognizable step to obtain the rights and privileges of lawful entry."); *see also Buenrostro-Mendez*, 166 F.4th at 511 (Douglas, J., dissenting) ("The majority's attempt to read the definition of 'applicant for admission' back into the phrase 'seeking admission,' as if sharing a word necessitates sharing a meaning, is unpersuasive.").

As the Supreme Court has noted, "our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality."  *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958).  In this vein, the Eleventh Circuit concludes as follows:

> Simply put, the language that Congress has chosen to use does not grant to the Executive unfettered authority to detain, without the possibility of bond, every unadmitted alien present in the country.  Nowhere in the text, structure, or history of the INA does that reading find steady footing.  We are obliged to read the words

---

[2] To the extent other cases use the term "noncitizen" interchangeably with "alien," the Court notes that the term "noncitizen" does not appear in the applicable provisions of the INA.  The Court uses the term "alien" herein according to its meaning in the applicable provisions of the INA.

found in the statute—"an alien who is an applicant for admission" and "an alien seeking admission"—in line with the meaning Congress has given them. When we do so, it appears to us that Congress has instead preserved the longstanding border-interior distinction for purposes of detention, a position it has taken for over a hundred years.

We therefore reject the Government's reading and affirm the district court's orders granting each of the Petitioners habeas corpus relief.

*Hernandez Alvarez*, 2026 WL 1243395, at *21.

### d. Petitioner's Detention

Because federal courts are "courts of limited jurisdiction" vested with a *sua sponte* obligation to ensure their own jurisdiction over any matter, the Court starts first with Respondents' arguments that the Court may not review Petitioner's claims under 8 U.S.C. § 1252(g) and § 1252(b)(9). Resp. at 11–16; *Gunn v. Minton*, 568 U.S. 251, 256 (2013). Section 1252(g) provides:

Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). Section 1252(b)(9) provides:

Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9). According to Respondents, taking § 1252(g) and § 1252(b)(9) together, Petitioner's detention "clearly 'arises from' the decision to commence removal proceedings against an alien" such that this Court lacks jurisdiction to consider the issue of detention without bond. Resp. at 12 (quoting *Alvarez v. ICE*, 818 F.3d 1194, 1203 (11th Cir. 2016)).

The Court finds that its previous determination that it has jurisdiction over this matter is

not disturbed by either of these provisions. Section 1252(g) is a "narrow" provision only encompassing the decision to "commence proceedings, adjudicate cases, or execute removal orders." *Reno v. Am.-Arab Anti-Discrim. Comm.*, 525 U.S. 471, 482 (1999) (emphasis in original) ("It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings."). Detention is not one of these enumerated decisions, and therefore challenges to the same are not barred by this statute. *See Merino v. Ripa,* No. 25-cv-23845, 2025 WL 2941609, at *3 (S.D. Fla. Oct. 15, 2025) (collecting cases). As to § 1252(b)(9), the Supreme Court has rejected an "expansive interpretation" of that statute that would deprive a court of jurisdiction to review detention without a bond hearing. *Jennings*, 583 U.S. at 293. Accordingly, the Court is satisfied that it properly has jurisdiction to entertain the instant Petitions.

Applying the foregoing statutory framework, then, Petitioner is properly considered an applicant for admission as an alien present in the United States who has not been admitted under § 1225(a)(1), but is not "seeking admission" within the meaning of § 1225(b)(2)(A). For the reasons discussed above, "seeking admission" and "applicant for admission" are not synonymous, and there is no contention that Petitioner was somehow attempting to secure admission into the country when he was detained at a routine ICE check-in that he attended as pursuant to his OSUP's terms.

Further, the statute requires that an "examining immigration officer" determine that an alien be one "seeking admission" to invoke mandatory detention pending a § 1229a proceeding, and there is no indication in the materials provided by Respondents that such determination occurred when Petitioner was detained. *See* 8 U.S.C. § 1225(b)(2)(A); *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 781 (E.D. Mich. 2025).

13

Briefly reviewing Respondents' arguments to the contrary, they first argue that Petitioner is subject to detention as an applicant for admission under 8 U.S.C. § 1225(b)(2)(A) as clarified in *Matter of Yajure Hurtado*. Resp. at 5–8. For the reasons discussed above, that Petitioner is an applicant for admission still does not bring him within the ambit of § 1225(b)(2)(A) because he was not seeking admission at the time that he was detained.[3] *See Hernandez Alvarez*, 2026 WL 1243395, at *21 (rejecting the government's argument that petitioners were seeking admission because they did not voluntarily self-deport following their arrest and initiation of removal proceedings). Respondents further assert that § 1226(a) has no impact and that applicants for admission may only be released from detention under 8 U.S.C. § 1182(d)(5) parole, which are both unavailing arguments based on the foregoing determination that § 1226(a) properly governs. Resp. at 9–10.

For the reasons set forth above, the Court finds that § 1226(a) and its implementing regulations govern Petitioner's detention, not § 1225(b)(2)(A), and therefore that Petitioner is detained in violation of the laws of the United States pursuant to 8 U.S.C. § 2241. Accordingly, Petitioner is entitled to an individualized bond hearing as a detainee under § 1226(a).

### e. Due Process Violation

The Court will not reach the merits of Petitioner's due process claims because the relief requested in the other Counts is granted for the reasons stated above. *See Puga*, 2025 WL 2938369, at *6; *Castro*, 2026 WL 788019, at *6. Should Respondents fail to provide Petitioner with a bond hearing as ordered herein, Petitioner may renew his due process claims.

---

[3] Further, the Court "need not defer to the BIA's interpretation of law simply because the statute is ambiguous." *See Puga*, 2025 WL 2938369, at *5 (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024)).

14

## IV.     CONCLUSION

Accordingly, UPON CONSIDERATION of the Petition, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that the Petition (ECF No. 1) is GRANTED IN PART.  Counts I, II, IV, and V of the Petition are DISMISSED WITHOUT PREJUDICE.  The Court will not award fees and costs under the Equal Access to Justice Act at this time upon a finding that Respondents' asserted position was substantially justified under the circumstances.  *See* 28 U.S.C. § 2412(d)(1)(A). Within seven (7) days of this Order, Respondents shall provide Petitioner with an individualized bond hearing consistent with 8 U.S.C. § 1226(a) or otherwise release Petitioner.  Such bond may not be denied on the basis that Petitioner is detained pursuant to § 1225(b)(2).

DONE AND ORDERED in Chambers at Miami, Florida, this __20th__ day of May, 2026.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c: All counsel of record

15